IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE L. BOXLER, | ) | Case No. 5:16-cv-2154 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      Introduction

Plaintiff Stephanie L. Boxler seeks judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her applications for disability

insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of

the Social Security Act.  This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42

U.S.C. §405(g), and Local Rule 72.2(b).

Because the ALJ supported his decision with substantial evidence and applied the correct

legal standards, I recommend that the final decision of the Commissioner be **AFFIRMED**.

## II.      Procedural History

Boxler filed applications for DIB and SSI on December 12, 2012, alleging a disability

onset date of October 1, 2012.  (Tr. 263-71, 295-97)  Boxler's applications were denied initially

and upon reconsideration.  (Tr. 122, 140)  Thereafter, she attended a hearing before

Administrative Law Judge Charles Shinn ("ALJ") on July 8, 2015.  (Tr. 35-70)  On March 23,

2015, the ALJ denied Boxler's claim for benefits.  (Tr. 11-32)  The Appeals Council denied

review of that decision on July 19, 2016, rendering the ALJ's decision the final decision of the

Commissioner.  (Tr. 1-4)

## III.    Relevant Evidence

### A.    Personal, Educational, and Vocational Evidence

Boxler was born in 1981.  (Tr. 94)  She completed high school without special education.

(Tr. 39-40, 51)  She worked previously as a cashier.  (Tr. 106)

### B.    Medical Evidence

In 1989, at age 8, Boxler underwent surgery to remove a medulloblastoma (brain tumor)

and received radiation treatment.  (Tr. 384-88)  Reportedly, ten years later an MRI of her brain

was described as "stable."  (Tr. 416)  The administrative record contains no medical records

from 1990 through 2011.  (ECF Doc. No. 13 at Page ID# 770)

On June 26, 2012, Boxler sought treatment in an emergency room as a result of

complaints of vision changes.  (Tr. 400)  Plaintiff was diagnosed with cephalgia (i.e., cluster

headaches).[1]  (Tr. 401).  A CT of her brain revealed no residual or recurrent tumor and no

definitive acute intracranial process.  (Tr. 417)  The CT found mild to moderate atrophy but it

was noted that it was "not unusual given the patient's age."  (401, 417)  She was prescribed

Fioricet and discharged in stable condition.  (Tr. 401)

She returned to the emergency room on July 13, 2012, for similar symptoms; and

reported the Fioricet did not relieve her pain.  (Tr. 403).  On September 14, 2012, she underwent

a neuro-evaluation, and reported increased energy with no recent bouts of pain.  (Tr. 415-419).

---

[1]http://www.medicinenet.com/script/main/art.asp?articlekey=6533 (last visited June 1, 2017).

In a March 2013 psychological evaluation with John J. Brescia, M.A., Boxler reported that she had trouble concentrating. (Tr. 436) It was noted that Boxler was working part-time but was having difficulty with the job due to stress. (Tr. 438) Mr. Brescia determined that Boxler had the ability to maintain attention and concentration to perform simple, repetitive tasks, but that her pace of performance and persistence would be limited. (Id.) Mr. Brescia also reported that she would have difficulty handling the pressures and demands present in a work setting, and may not always know how to deal with situational stressors effectively. (Tr. 439). Mr. Brescia diagnosed Plaintiff with depressive disorder, anxiety disorder, and recommended psych services to help alleviate her emotional distress. (Tr. 438).

Mitzi Hutchins, P.C., performed a diagnostic assessment on Boxler in June 2013. (Tr. 535-552). Boxler expressed suicidal ideation but stated that she did not really think she "would really do it." (Tr. 550) Hutchins opined that Boxler would benefit from counseling to learn appropriate ways to express thoughts and feelings, as well as understanding triggers to feeling hopeless. (Tr. 550). Hutchins diagnosed Boxler with episodic mood disorder and anxiety disorder. (Tr. 550-551).

Boxler received neurological services from Selwyn-Lloyd McPherson, M.B.B.S., M.D., from June 2013 until March 2014. (Tr. 456-512). Dr. McPherson initially diagnosed chronic tension headaches, generalized anxiety disorder, caffeine dependence, and vitamin B12 deficiency. (Tr. 456) Dr. McPherson prescribed Topamax, Buspar, Zoloft, Vitamin B12 injections, and dietary changes. (Tr. 459)

From June 2013 to November 2013, William Russell met with Boxler for individual counseling sessions for depression and anxiety. (Tr. 514-534). Throughout counseling, Boxler

presented with logical thought process, fair insight, and average intelligence. (Tr. 515, 521, 524, 527, 530, 533)

In 2013 through 2014, Boxler met with Jessica Bittence, M.D. (Tr. 450-456, 462-473, 554-561). Dr. Bittence noted that Boxler's depression and migraines were stable with pharmaceutical intervention. (Tr. 467, 472-73) On examination, Boxler consistently passed remote and recent memory tests and had normal neurological exams. (Tr. 453, 465, 471, 494, 500, 506) Dr. Bittence noted that, "with [medullablastoma] resection, patient suffers from developmental delay. Dr. MacPherson [sic] did brain wave test which exhibited slowness."[2] (Id.) She recommended that Boxler follow up with Dr. McPherson. (Id.)

The Cleveland Clinic Lutheran Hospital admitted Boxler for depression and suicidal ideation on January 27, 2015 and discharged her January 28, 2015. (Tr. 614-651). She reported her stressors as unemployment and frustration with her son. (Tr. 615) Boxler alleged that she had been diagnosed with depression 8 years earlier when she was pregnant with her son. (Id.) She stated she was prescribed Zoloft for her depression at that time, which was increased and managed by her physician. (Id.) She stated that she never saw a psychiatrist and reported that the Zoloft did not help. (Id.) Boxler reported that she had been slower at tasks since her medulloblastoma removal in 1989 and struggled to maintain employment for that reason. (Tr. 614). She was diagnosed with mood disorders, major depressive disorder, recurrent, severe without psychotic symptoms. (Tr. 632).

---

[2] The ALJ addressed this statement and indicated that there was no evidence in the record to support the statement regarding Dr. McPherson conducted a brain wave test exhibiting the suggested result. Likewise, Boxler points to no evidence in the record in support of that statement. In fact, in her briefing, she argues to the contrary (i.e., that "no brainwave test can identify bradyphrenia (mental slowness). ECF Doc. No. 11, Page ID# 750.

On February 23, 2015, Michael Gostkowski, D.O., evaluated Boxler for bradyphrenia.[3] (Tr. 608). Dr. Gostkowski stated that the etiology of bradyphrenia was "unclear and may reflect a consequence of prior neurosurgery, psychiatric, or idiopathic etiology." (Tr. 608). A subsequent CT Scan displayed an enlargement of her fourth ventricle, evidence of remote surgical manipulation of the low occipital calvarium. (Tr. 611) It was suggested that a "MRI mass protocol without and with gadolinium and CSF flow study may be useful for more definitive characterization." (Tr. 611)

## C. Testimonial Evidence[4]

Boxler testified that she completed high school and did not attend special education classes. (Tr. 39-40, 51) Boxler testified that she previously worked part-time as a cashier for Circle K but was fired because she was too slow. (Tr. 48-49) She testified that prior to that she worked part-time at a gift shop for 8 years before voluntarily leaving to take the Circle K opportunity. (Tr. 49) She testified that she worked as many as 35 hours in a week but went down to 20 hours a week to keep her medical card. (Tr. 49-50) At the time of the hearing, she that she could "possibly" work either of those jobs but had a hard time standing. (Id.) She later stated she would also have a hard time with fast-paced work and lifting. (Tr. 50)

## IV. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[3] Bradyphrenia is defined as slowness of thought or fatigability of initiative. Dorland's Illustrated Medical Dictionary 249 (31st ed.2007)
[4] Vocational Expert Tonya Shulow also testified at the hearing. (Tr. 59-69) However, because Boxler's appeal does not relate to Ms. Shulow's opinionsy, the testimony will not be summarized herein.

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[5]….

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to

follow a five-step sequential analysis set out in agency regulations.  The five steps can be

summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

---

[5] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this

sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v.*

*Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner

at Step Five to establish whether the claimant has the RFC and vocational factors to perform

work available in the national economy. *Id.*

## V.     The ALJ's Decision

The ALJ issued a decision on March 23, 2015. (Tr. 11-32) A summary of his findings

are as follows:

1. Boxler meets the insured status requirements of the Social Security Act
   through December 31, 2018. (Tr. 16)

2. Boxler has not engaged in substantial gainful activity since October 1, 2012,
   the alleged onset date. (Tr. 21)

3. Boxler has the following severe impairments: history of medulloblastoma,
   migraines, episodic mood disorder, depression, and anxiety disorder. (Tr. 16)

4. Boxler does not have an impairment or combination of impairments that meets
   or medically equals the severity of one of the listed impairments. (Tr. 17)

5. Boxler has the residual functional capacity ("RFC") to perform light work
   except she cannot climb ladders, ropes, or scaffolds; must avoid workplace
   hazards, such as unprotected heights or dangerous moving machinery; cannot
   perform any commercial driving; limited to simple, routine tasks that do not
   involve directing the work of others, or being responsible for the safety or
   welfare of others; cannot perform piece rate work or assembly line work; and
   limited to only occasional interaction with others. (Tr. 19)

6. Boxler is unable to perform any past relevant work. (Tr. 25)

7. Boxler was born on August 15, 1981, and was 31 years old, which is defined
   as a younger individual age 18-49, on the alleged disability onset date. (Tr.
   25)

8. Boxler has at least a high school education and is able to communicate in
   English. (Tr. 25)

9. Considering Boxler's age, education, and work experience, and RFC, there are

> jobs that exist in significant numbers in the national economy that the
> claimant can perform. (Tr. 25)

Based on these findings, the ALJ determined that Boxler had not been under a disability from

October 1, 2012, through the date of the decision. (Tr. 26)

## VI. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the

record to support the ALJ's findings of fact and whether the correct legal standards were applied.

*See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed

if the administrative law judge's findings and inferences are reasonably drawn from the record or

supported by substantial evidence, even if that evidence could support a contrary decision.");

*Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been

defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and*

*Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact,

if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3).

The findings of the Commissioner are not subject to reversal merely because there exists in the

record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762,

772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v.*

*Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also

support another conclusion, the decision of the Administrative Law Judge must stand if the

evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270,

273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing*

*Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

      The court must also determine whether proper legal standards were applied. If not,

reversal is required unless the legal error is harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572

F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006)

("Even if supported by substantial evidence, however, a decision of the Commissioner will not

be upheld where the SSA fails to follow its own regulations and where that error prejudices a

claimant on the merits or deprives the claimant of a substantial right.")

      Finally, a district court cannot uphold an ALJ's decision, even if there "is enough

evidence in the record to support the decision, [where] the reasons given by the trier of fact do

not build an accurate and logical bridge between the evidence and the result." *Fleischer v.*

*Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307

(7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D.

Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was

discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS

141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist.

LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S.

Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

      **B.**    **Argument**

      Boxler presents a single argument for review, contending that the ALJ erred by not

including a pace limitation in the RFC. ECF Doc. No. 11, Page ID# 749-51. Boxler contends

that a pace limitation is needed due to her diagnosis of bradyphrenia (mental slowness or

fatigability of initative).  The Commissioner argues that the RFC is supported by substantial

evidence and that Boxler fails to establish additional limitations related to bradyphrenia.  ECF

Doc. No. 13, Page ID# 773-74.

Boxler contends that she was diagnosed with bradyphrenia by Dr. Gostkowski.  She

contends that because bradyphrenia "deals with an individuals [*sic*] ability to respond, i.e., the

timing or pace of their work-abilities," the ALJ was required to adopt a pace limitation in the

RFC.  However, Boxler's argument is not well taken.

As an initial matter, there is no evidence that Boxler was diagnosed with bradyphrenia as

she suggests.  Rather, Dr. Gostkowski stated that Boxler was "being evaluated for bradyphrenia."

(Tr. 608)  Boxler cites the results of a 2015 CT scan (Tr. 611) to support her contention that she

was diagnosed with bradyphrenia[6] but the CT scan results only indicated an enlargement of the

fourth ventricle with evidence of remote surgical manipulation of the low occipital calvarium."

(Id.)  No medical opinion evidence connects ventricular enlargement with the existence of

bradyphrenia.  Accordingly, the ALJ was not required to include limitations for a condition never

diagnosed by any physician.

Even if Boxler had been diagnosed with bradyphrenia, a diagnosis alone does not

establish the severity or limitations of a condition.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.

1988) ("The mere diagnosis of [an impairment], of course, says nothing about the severity of the

condition.  [Where] doctors' reports are silent regarding any limitation of joint motion, as well as

the intensity, frequency, and duration of arthritic pain…[w]e have upheld findings of no severe

---

[6] Notably, Boxler also simultaneously argues, without citing authority, that "no brainwave test can identify bradyphrenia; instead it is quantified by neuropsychological testing."  ECF Doc. No. 11, Page ID# 750.

impairment…");  *See also Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) (upholding the ALJ

decision where the record failed to contain any statements from physician's indicating that

claimant's health problems result in any specific work-impairing limitations); *Foster v. Bowen*,

853 F.2d 483, 489 (6th Cir. 1988) (plaintiff must show not only diagnosis but that she is disabled

by her mental impairment).  Here, Boxler fails to point to any evidence indicating a specific

work-impairing limitation related to a bradyphrenia diagnosis.

To the extent that Boxler argues that a diagnosis of bradyphrenia is generally indicative

of mental slowness, the ALJ addressed this contention in his opinion.  The ALJ found that

Boxler's prior claim that diagnostic testing showed mental slowness was unsubstantiated.  (Tr.

22)  Similarly, a review of the record causes the undersigned to find that Boxler has not

substantiated that claim in this appeal.  Conversely, the ALJ noted Dr. McPherson's finding that

there was "no evidence of memory impairment" during examination.  (Id.)  Dr. McPherson

concluded both that there was no clinical evidence of a cognitive impairment and no neurological

basis for Boxler's complaints.  (Id.)  The ALJ also noted that after successful removal of her

tumor as a child, Boxler has not had any reoccurrence.[7]  (Tr. 20)  She went on to graduate high

school, work on a regular basis,[8] and raise a child.  (Id.)  Based on all of the above, the ALJ's

decision is supported by substantial evidence and Boxler has not presented a valid reason for

reversal or remand.

---

[7] Although not dispositive of the issues addressed herein, I do note that between 2013 and 2014, Boxler's primary care physician (Dr. Bittence) consistently stated that Boxler passed remote and recent memory tests and had normal neurological exams.  (Tr. 453, 465, 471, 494, 500, 506)
[8] Although she stated that she was fired from her most recent position for being slow, she also testified that she held down a job at a gift shop for 8 years before leaving voluntarily.  (Tr. 49)

**VII. Recommendation**

The court should find that that the ALJ supported his decision with substantial evidence and correctly applied the law. These findings require the conclusion that Boxler has not demonstrated a basis upon which to reverse or remand the Commissioner's decision. I recommend that the final decision of the Commissioner be **AFFIRMED**, pursuant to 42 U.S.C. §405(g).

Dated: June 1, 2017

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).